UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BALA RAMA SUNDARA KRISHNA KIREETI MANTRIPRAGADA, et al.,<br><br>    Petitioners,<br><br>    v.<br><br>PETE FLORES, et al.,<br><br>    Respondents. | Case No. 22-cv-02012-VKD<br><br>**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS PETITION**<br><br>Re: Dkt. No. 18 |

In this immigration matter, petitioners Bala Rama Sundara Krishna Kireeti Mantripragada and Himani Mangasomayajula filed a "Petition for Writ of Habeas Corpus or in the Alternative Writ of Error Coram Nobis," challenging their removal to India and seeking declaratory and injunctive relief.[1]  Dkt. No. 1.  Respondents move pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss the petition for lack of subject matter jurisdiction and for failure to state a claim for relief.  Petitioners oppose the motion.  Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants respondents' motion to dismiss the petition.[2]

**I.   BACKGROUND**

According to their petition, Mr. Mantripragada and his wife, Ms. Mangasomayajula, are Indian nationals who were living in the United States, initially based on F-1 student visas, and

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 13, 14.

[2] Accordingly, the Court does not address petitioners' separately filed motion for summary judgment (Dkt. No. 19), which presents all the same arguments petitioners assert in their opposition to respondents' motion to dismiss.  Petitioners' summary judgment motion is hereby terminated as moot.

subsequently based on H-1B nonimmigrant visas to work on a temporary basis for various U.S. employers. Dkt. No. 1 ¶¶ 35-38. Mr. Mantripragada began his U.S. residence as a student in F-1 status in December 2014. *Id*. ¶ 36. He later obtained H-1B visa status in January 2019 for his employment with Colliers International WA LLC. Dkt. No. 1-1 at ECF 149. Another company, Revinate, Inc. ("Revinate"), later filed a "change of employer" H-1B petition for him, which was approved. At the time of the events in question, Mr. Mantripragada held an H-1B visa that was valid from June 4, 2020 to May 31, 2023. *Id*. at ECF 148.

Ms. Mangasomayajula also began her U.S. residence as a student in F-1 status in December 2014. Dkt. No. 1 ¶ 38; Dkt. No. 1-1 at ECF 128. She later obtained H-1B visa status in March 2019 through an H-1B petition filed on her behalf by her former employer, Mutual of Omaha Bank. Dkt. No. 1-1 at ECF 126. Another company, RPX Corporation ("RPX") later filed a "change of employer" H-1B petition for her, which was approved in October 2020. At the time of the events in question, Ms. Mangasomayajula held an H-1B visa that was valid from July 8, 2020 to June 28, 2023. *Id*. at ECF 125.

In November 2020, petitioners traveled to India to get married. Dkt. No. 1-1 at ECF 47, 129. They returned to the United States on January 17, 2021. Dkt. No. 1 ¶¶ 41-42. At that time, Mr. Mantripragada was returning to work for Revinate based on his H-1B visa, and Ms. Mangasomayajula was returning to work for RPX based on her H-1B visa. *Id*. ¶¶ 39, 40.

Petitioners arrived at the U.S. Customs and Border Protection ("CBP") port of entry at the San Francisco International Airport ("SFO") and presented their H-1B visas and passports for admission to the United States. *Id*. ¶¶ 41, 42, 43. According to the petition, a CBP officer inspected Mr. Mantripragada and stamped his passport reflecting his admission to the United States in H-1B status through October 6, 2021. *Id*. ¶¶ 45, 46; Dkt. No. 1-1 at ECF 44.

Petitioners further allege that Ms. Mangasomayajula was then called to speak to the same CBP officer, and she presented her H-1B visa and passport for inspection. Dkt. No. 1 ¶¶ 47-48. The officer reportedly inquired about Ms. Mangasomayajula's employment and told her that she would need to proceed to a secondary inspection for further questioning. *Id*. ¶ 49. According to the petition, the officer informed Mr. Mantripragada that he could choose to accompany his wife

2

to the secondary inspection area; Mr. Mantripragada did so and waited outside the inspection room. *Id.* ¶¶ 50-51.

CBP officers began questioning Ms. Mangasomayajula and then instructed Mr. Mantripragada to join her in the inspection room, where both petitioners were questioned (initially together, then separately) about how they funded their educations while studying in the United States in F-1 visa status. *Id.* ¶¶ 52-55, 63. Petitioners state that they explained that their respective fathers provided funds for their respective educations, and Ms. Mangasomayajula noted that while in F-1 status she was a graduate teaching assistant for one semester. *Id.* ¶¶ 56, 57. After further questioning, and after demanding and inspecting petitioners' cellphones (which petitioners say they provided to the officers under protest) the CBP officers determined that petitioners had engaged in fraud to obtain their visas by omitting that they worked without authorization while they were students in F-1 status. *See id.* ¶¶ 60-95. The CBP officers found that both petitioners were inadmissible due to willful misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i)[3] and were subject to expedited removal for lack of valid documentation under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[4] CBP revoked petitioners' visas and issued an order for expedited removal. *Id.* ¶¶ 105-107, 109. Petitioners were returned to New Delhi, India that same day. Dkt. No. 1 ¶ 110; Dkt. No. 1-1 at ECF 85, 203.

Petitioners maintain that the CBP officers did not present them with any evidence supporting the allegations of unauthorized employment. Petitioners further contend that they admitted to the officers' accusations under duress after many hours of questioning, and that, despite their requests, they were not given an opportunity to review the written statements they signed and which, they claim, contain inaccuracies and misstatements. Dkt. No. 1 ¶¶ 96-104. Petitioners assert that they were not given forms executed by the CBP officers, namely Form I-860

---

[3] "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i).

[4] This statute provides, in relevant part, that "any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document . . . , and a valid unexpired passport . . . is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i)(I).

1  (expedited removal order), Form I-296 (notice re removal) and Form I-867A (information re

2  expedited removal process). Petitioners say that they first obtained such documentation after their

3  lawyer filed a request with the U.S. Customs and Immigration Service under the Freedom of

4  Information Act. *Id*. ¶¶ 113-115.

5         Petitioners filed this action on March 29, 2022, asserting seven claims for relief. With

6  respect to Mr. Mantripragada, petitioners claim that he "was admitted to the U.S. in H-1B status

7  by CBP," and thus the expedited removal order violates Mr. Mantripragada's due process rights

8  (claim 1); the revocation of his H-1B visa was unlawful (claim 2); and his expedited removal

9  violates the Suspension Clause (claim 3). Dkt. No. 1 ¶¶ 116-146. Petitioners additionally claim

10  that the CBP's finding of willful misrepresentation against each of them violates the Immigration

11  and Nationality Act ("INA") and the Administrative Procedures Act ("APA") (claim 4), and that

12  Ms. Mangasomayajula's expedited removal therefore was procedurally and substantively flawed

13  (claim 5). *Id*. ¶¶ 147-174. Petitioners seek a writ of habeas corpus, or alternatively, a writ of error

14  coram nobis for Mr. Mantripragada (claim 6) and for Ms. Mangasomayajula (claim 7). *Id*. ¶¶ 175-

15  230. They also request an order vacating respondents' findings and actions; declaring the

16  revocation of petitioners' visas to be unlawful; requiring Mr. Mantripragada's return and

17  admission to the United States pursuant to his H-1B visa; requiring Ms. Mangasomayajula's return

18  to the San Francisco International Airport for a proper inspection; and awarding petitioners their

19  reasonable attorney's fees and costs. Dkt. No. 1 at 35-36.

20         Respondents move to dismiss the petition pursuant to Rules 12(b)(1) and 12(b)(6), arguing

21  that (1) petitioners' claims for habeas relief are moot; (2) the Court lacks jurisdiction under the

22  INA to review petitioners' expedited removals; (3) Mr. Mantripragada's Suspension Clause claim

23  has no merit; (4) the APA does not provide petitioners with the redress they seek; (5) the doctrine

24  of consular nonreviewability precludes judicial review of petitioners' claims; (6) a writ of coram

25  nobis is not available to petitioners; and (7) petitioners lack standing to seek their requested relief.

26

27

28

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Motion to Dismiss

A Rule 12(b)(1) motion to dismiss challenges a federal court's jurisdiction over the subject matter of a plaintiff's complaint. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). The Court construes respondents' motion to dismiss as raising a facial attack on jurisdiction. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial attack on jurisdiction, the record is limited to the complaint and materials that may be judicially noticed. *See Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017). Additionally, the Court accepts well-pled allegations of the complaint as true, draws all reasonable inferences in petitioners' favor, and determines whether the allegations are sufficient to support jurisdiction. *Id*.

As the parties asserting federal subject matter jurisdiction, petitioners bear the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

## III.    DISCUSSION

### A.    Whether Mr. Mantripragada Was "Admitted" to the United States

Before turning to respondents' arguments concerning specific claims for relief, the Court first addresses a key issue that is the primary basis of petitioners' contentions, as well as their arguments in opposition to respondents' present motion to dismiss—namely, whether Mr. Mantripragada was "admitted" to the United States within the meaning of the INA. Petitioners contend that once the CBP officer placed an admission stamp in Mr. Mantripragada's passport, Mr. Mantripragada was "admitted" to the United States and entitled to greater due process protections before he and his wife were returned to India.[5] Specifically, petitioners maintain that the officers were foreclosed from using expedited removal procedures under 8 U.S.C. § 1225(b), which generally provides for removal of aliens found to be inadmissible "without further hearing or review[.]" 8 U.S.C. § 1225(b)(1)(A)(i). Petitioners argue that the officers were instead required under 8 U.S.C. § 1229a[6] to provide Mr. Mantripragada with a Notice to Appear to begin

---

[5] There is no contention that Ms. Mangasomayajula was also "admitted" to the United States on the day in question. At oral argument, petitioners agreed that Ms. Mangasomayajula does not derive any benefit of Mr. Mantripragada's alleged "admission" to the United States by virtue of her association with him.

[6] Section 1229a is titled "Removal proceedings," and provides, in relevant part, that "[a]n

6

removal proceedings. If Mr. Mantripragada was "admitted" to the United States, then insofar as respondents' present motion to dismiss concerns expedited removal proceedings under 8 U.S.C. § 1225(b), petitioners argue that the motion is misguided. *See* Dkt. No. 20 at 1-2. However, if Mr. Mantripragada was not "admitted," then as petitioners acknowledged at oral argument, this Court's review of his removal is strictly "limited to whether [a removal order under § 1252(b)(1)] in fact was issued and whether it relates to the petitioner"—*i.e.*, matters that are not disputed in this action. *See* 8 U.S.C. § 1252(e)(5). Indeed, § 1252(e)(5) expressly states that "[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." *Id*.

Respondents do not dispute that Mr. Mantripragada's passport initially was stamped "admitted," but they disagree with petitioners' contentions about the legal ramifications of that act. Respondents maintain that Mr. Mantripragada never effected a lawful entry to the United States, and thus was not "admitted," because he never left CBP's control and supervision. Petitioners maintain that respondents' arguments are based on concepts of "entry" and "official restraint" that are no longer relevant following amendments to the INA made by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996 and which took effect on April 1, 1997.

Prior to the passage of IIRIRA, the INA distinguished between aliens based on the so-called "entry doctrine." *Lezama-Garcia v. Holder*, 666 F.3d 518, 526 (9th Cir. 2011). "'Entry' dictated what type of enforcement proceeding applied to determine whether a non-citizen could be removed or barred from the country." *Hing Sum v. Holder*, 602 F.3d 1092, 1099 (9th Cir. 2010). Aliens who were physically present in the United States were subject to deportation proceedings (and greater associated rights), whereas those who had not made an entry into the United States were subject to summary exclusion proceedings. *Id*. at 1099-1100; *see also Lezama-Garcia*, 666 F.3d at 526. The entry doctrine thus "resulted in an anomaly." *Hing Sum*, 602 F.3d at 1100. "Under this regime, non-citizens who had entered without inspection could take advantage of the

---

immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). Additionally, "[u]nless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id*. § 1229a(a)(3).

7

1    greater procedural and substantive rights afforded in deportation proceedings, while non-citizens
2    who presented themselves at a port of entry for inspection were subjected to more summary
3    exclusion proceedings." *Id*.

4    "IIRIRA addressed this anomaly by substituting 'admission' for 'entry' and by replacing
5    deportation and exclusion proceedings with a general 'removal' proceeding." *Id*. "Under the new
6    regime, 'admission' now determines whether a non-citizen is subject to grounds of deportability or
7    inadmissibility within the context of a removal proceeding." *Id*. "The standard removal process
8    involves three levels of review: an evidentiary hearing before an immigration judge, an appeal to
9    the Board of Immigration Appeals, and review in a federal court of appeals." *Guerrier v.
10   Garland*, 18 F.4th 304, 306 (9th Cir. 2021) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 140
11   S. Ct. 1959, 1964 (2020)). "However, Congress has provided *expedited* removal procedures for
12   certain noncitizens, including those who (1) are 'inadmissible because [they] lack[ ] a valid entry
13   document,' (2) have not 'been physically present in the United States continuously for the 2-year
14   period immediately prior to the date of the determination of inadmissibility,' and (3) are 'among
15   those whom the Secretary of Homeland Security has designated for expedited removal.'" *Id*.
16   (quoting *Thuraissigiam*, 140 S. Ct. at 1964-65). "Once 'an immigration officer determines' that a
17   designated applicant 'is inadmissible,' 'the officer [must] order the alien removed from the United
18   States without further hearing or review.'" *Thuraissigiam*, 140 S. Ct. at 1965 (alteration in
19   original) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)); *Guerrier*, 18 F.4th at 306 (same).

20   Petitioners argue that IIRIRA's purpose was to completely eliminate the concept of "entry"
21   from the INA. They maintain that under IIRIRA, admission requires only procedural regularity,
22   which they contend was satisfied when Mr. Mantripragada presented himself for inspection and
23   authorization by CBP officers at SFO and received an admission stamp in his passport. *See* Dkt.
24   No. 20 at 6. The Board of Immigration Appeals ("BIA") and courts, including the Ninth Circuit,
25   construe the terms "admission" and "admitted" to signify procedural regularity, not compliance
26   with substantive legal requirements. *See Hing Sum*, 602 F.3d at 1100-01; *In re Quilantan*, 25 I. &
27   N. Dec. 285 (2010); *In re Areguillin*, 17 I. & N. Dec. 308 (1980). However, applicable regulations
28   and caselaw indicate that inspection and authorization by an immigration officer is necessary, but

8

not sufficient, for "admission" to the United States. Rather, "entry" into the United States is still required.

"'Congress amended section [1101(a)(13)] of the [INA] simply to eliminate that aspect of the 'entry doctrine' that permitted aliens who had entered without inspection to have greater procedural and substantive rights in deportation proceedings than those who had presented themselves for inspection at a port of entry and had been placed in exclusion proceedings.'" *Lezama-Garcia*, 666 F.3d at 528 (quoting *In re Quilantan*, 25 I. & N. Dec. 285, 291 (BIA 2010)). "This intent is evident in the meaning of the term '*lawful* entry' in § 1101(a)(13)(A)," which "refers to an entry involving inspection and admission by an immigration officer, as opposed to those unlawful entries involving actual and intentional evasion of inspection at the nearest inspection point." *Id*.

Thus, notwithstanding the passage of IIRIRA, the concept of "entry" is "still relevant as some aspects have survived," and 8 U.S.C. § 1101(a)(13)(A) "now uses the term 'admission' to include a '*lawful* entry[.]'" *Id*. at 526, 527; *see generally United States v. Argueta-Rosales*, 819 F.3d 1149, 1159 n.5 (9th Cir. 2016) (noting, in an illegal entry case under 8 U.S.C. § 1326, that IIRIRA did not eliminate the concept of "entry" from the INA altogether because § 1101(a)(13)(A) "expressly continues to rely on the concept of 'entry,' by using that term as part of the definition of 'admission.'"). Specifically, "admission" and "admitted" mean, "with respect to an alien, the *lawful entry* of the alien into the United States *after* inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). The Ninth Circuit has "explained that this 'definition refers expressly to *entry into* the United States, denoting by its plain terms passage into the county from abroad at a port of entry.'" *Posos-Sanchez v. Garland*, 3 F.4th 1176, 1183 (9th Cir. 2021) (quoting *Negrete-Ramirez v. Holder*, 741 F.3d 1047, 1051 (9th Cir. 2014).

The Court finds instructive *Sidhu v. Ashcroft*, 368 F.3d 1160 (9th Cir. 2004). In *Sidhu*, the petitioner, a lawful permanent resident returning to the United States from an overseas trip, presented herself for inspection at the Los Angeles International Airport. After asking some questions in the primary inspection area, an immigration officer stamped her passport as admitted.

9

*Id*. at 1161. Before leaving the airport inspection area, however, Ms. Sidhu voluntarily complied with another officer's request to go to the secondary inspection area to help him communicate with another passenger. *Id*. at 1161-62. While Ms. Sidhu was in the secondary inspection area, officers learned that she was a suspected alien smuggler and took her into custody. *Id*. at 1162-63. In evaluating whether Ms. Sidhu entered the United States, the Ninth Circuit adopted the BIA's definition of "entry," which requires: "'(1) a crossing into the territorial limits of the United States, *i.e.*, physical presence; (2)(a) inspection and admission by an immigration officer, or (b) actual and intentional evasion of inspection at the nearest inspection point; and (3) freedom from official restraint.'" *Id*. at 1163-64 (quoting *In re Patel*, 20 I. & N. Dec. 368, 370 (BIA 1991)). The Ninth Circuit concluded that (1) Ms. Sidhu met the first requirement, as she was physically present in the United States when her flight landed and she entered the airport; (2) it was questionable whether Ms. Sidhu was inspected and admitted by an immigration officer because although her passport was stamped admitted, "she was still required to pass through secondary inspection"; but (3) she was never free from "official restraint," in any event, because she never exited the secondary inspection area. *Id*. at 1164.

*Sidhu* indicates that it does not matter that Mr. Mantripragada's passport initially was stamped admitted because like Ms. Sidhu, Mr. Mantripragada voluntarily went to the secondary inspection area at SFO and never left. *See* Dkt. No. 1 ¶ 83 ("The CBP Officers never gave [Mr. Mantripragada] the opportunity to leave CBP's secondary inspection area at the SFO Airport."); *see also Correa v. Thornburgh*, 901 F.2d 1166 (2d Cir. 1990) (concluding that petitioner who cleared the primary inspection area at an airport did not effect an "entry" into the United States when she remained in the restricted Customs Enclosure area); *see also In re Patel*, 20 I. & N. Dec. at 374 (stating that "[t]he critical point in such cases is that freedom from official restraint exists, not that such freedom has been exercised.").

While *Sidhu*, *Correa*, and *Patel* were decided under the pre-IIRIRA version of the law, petitioners have not pointed to authority clearly holding that the concepts of "official restraint" or "entry" become irrelevant once an alien's passport is stamped admitted, notwithstanding that he remains subject to immigration officers' control. Relying primarily on *In re Quilantan*, 25 I. & N.

10

Dec. 285 (BIA 2010), petitioners argue that all that is required for "admission" to the United States is procedural regularity. *See Quilantan*, 25 I. & N. at 291 (stating that "an admission occurs as long as it is procedurally regular" and "'occurs when the inspecting officer communicates to the applicant that he has determined that the applicant is not inadmissible.'") (quoting *In re Areguillin*, 17 I. & N. Dec. 308, 310 & n.6 (BIA 1980)). However, *Quilantan* does not address freedom from official restraint; indeed, there was no question in that case that the alien, in fact, passed through the port of entry into the United States. *See id.* at 286. The same is true of *Areguillin*. *See Areguillin*, 17 I. & N. at 309.

Petitioners nonetheless maintain that "[o]ther than to answer questions and offer his documents for inspection, the alien plays a passive role in the interplay from which an 'admission' may result," and that "'[a]dmission' occurs when an authorized employee of the Service communicates in a tangible manner to an applicant for admission his determination that the applicant has established that he is not inadmissible under the immigration laws. At the point such communication is made and received by the applicant, 'admission' has occurred." *In re V-Q-*, 9 I. & N. Dec. 78, 79-80 (BIA 1960). *V-Q-*, however, was superseded by *In re Pierre*, 14 I. & N. Dec. 467 (BIA 1973), in which the BIA concluded that Haitian aliens, who remained on board their boat at a United States port of entry to wait for inspection by an immigration officer, remained under official restraint and did not enter the United States. *See In re Patel*, 20 I. & N. at 373 (stating that *Pierre* superseded *V-Q-*). The BIA subsequently clarified that *V-Q-* "should not be read as requiring that an alien who has been inspected and admitted, but who has not yet been freed from official restraint, be placed in deportation rather than exclusion proceedings." *Id.*

Petitioners argue that if "admission" under § 1101(a)(13)(A) retains elements of "entry," then that statutory definition necessarily also encompasses the so-called *Fleuti*[7] doctrine. *See* Dkt. No. 20 at 5-6; Dkt. No. 29 at 2. They have not cited any authority to support that contention. Under the *Fleuti* doctrine, a lawful permanent resident "who made an 'innocent, casual, and brief' trip across an international border did not 'intend[ ]' a 'departure' within the meaning of INA

---

[7] *Rosenberg v. Fleuti*, 374 U.S. 449 (1963).

11

§ 101(a)(13)." *Camins v. Gonzales*, 500 F.3d 872, 876 (9th Cir. 2007) (quoting *Fleuti*, 374 U.S. at 461). "Because the [lawful permanent resident] was thus not an alien seeking 'entry' to the United States upon his return, he was not subject to a charge of inadmissibility." *Id*. (quoting *Fleuti*, 374 U.S. at 461). Under the *Fleuti* doctrine, "only 'meaningfully interruptive' departures from the United States subject a resident alien to the INA's entry requirements." *Lezama-Garcia*, 666 F.3d at 527 (quoting *Fleuti*, 374 U.S. at 462). Although the *Fleuti* doctrine "was limited to aliens having a lawful permanent residence in the United States," the Ninth Circuit has "recognized that the exception could apply in other situations, *where Congress so provided*." *Id*. (noting that the *Fleuti* doctrine has been held to apply to the lawful temporary residents in the Special Agricultural Workers program) (internal quotations and citation omitted) (emphasis added). Nevertheless, the Ninth Circuit has held that IIRIRA abrogated the *Fleuti* doctrine, and petitioners have cited no authority that the *Fleuti* doctrine applies to them in any event. *See Camins*, 500 F.3d at 880; *see also Vartelas v. Holder*, 566 U.S. 257, 261, 263 n.2 (2012) (assuming, without deciding that IIRIRA abrogated the *Fleuti* doctrine, IIRIRA did not apply retroactively). *Cf. Lezama-Garcia*, 666 F.3d at 528-30 (discussing that for certain aliens, the Nicaraguan Adjustment and Central American Relief Act "essentially gave back some of what IIRIRA took away.").

Accordingly, petitioners have not demonstrated that Mr. Mantripragada was "admitted" to the United States, within the meaning of the INA, such that CBP officers were foreclosed from issuing expedited removal orders pursuant to 8 U.S.C. § 1225(b)(1).

### B.     Judicial Review of Expedited Removal Orders

The Court's jurisdiction to review the CBP's expedited removal orders is governed by 8 U.S.C. § 1252, which provides for limited judicial review of such orders. *See* 8 U.S.C. § 1252(a)(2)(A). As relevant to the present action, the INA expressly prohibits judicial review of "the application of [§ 1225(b)(1)] to individual aliens[.]" *Id*. § 1252(a)(2)(A)(iii); *Singh v. Barr*, 982 F.3d 778, 782 (9th Cir. 2020) ("Judicial review of an expedited removal order, including the merits of a credible fear determination, is thus expressly prohibited by § 1252(a)(2)(A)(iii)."). While § 1252(e) provides for judicial review in habeas corpus proceedings, the scope of such review is strictly limited to three issues that are not disputed here, namely (1) whether petitioners

are aliens, (2) whether petitioners were ordered removed pursuant to § 1225(b)(1), and (3) whether petitioners are lawful permanent residents, refugees, or asylees. 8 U.S.C. § 1252(e)(2)(A)-(C); *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138-39 (9th Cir. 2008) ("Section 1252(e) only permits review of expedited removal orders in a habeas corpus petition, and even then the review is limited to an inquiry over [the issues identified in § 1252(e)(2)(A)-(C)]."). Further, as discussed above, "[i]n determining whether an alien has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner"—i.e., matters that are not at issue here. *See* 8 U.S.C. § 1252(e)(5). "There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." *Id.*[8]

For these reasons, the Court concludes that it lacks jurisdiction over petitioners' claims to the extent they seek habeas relief collaterally attacking the expedited removal orders in question, as well as petitioners' claims under the Suspension Clause. *See, e.g., Mendoza-Linares v. Garland*, — F.4th —, 2022 WL 13743529, at *10-12 (9th Cir. Oct. 24, 2022) (concluding that district court would lack jurisdiction over petitioner's habeas corpus claims where there was no dispute as to the three issues within the court's "narrow habeas corpus authority" under § 1252(e)(2)(A)-(C)); *Guerrier*, 18 F.4th at 310-13 (dismissing petition for review of expedited removal order for lack of jurisdiction, noting that the Supreme Court's decision in *Thuraissigiam* "abrogated any 'colorable constitutional claims' exception to the limits 8 U.S.C. § 1252(a)(2)(A) places on this court's jurisdiction to review Guerrier's petition."); *Garcia de Rincon*, 539 F.3d at 1139 (concluding that there was no jurisdiction to consider alien's petition for review of reinstatement of expedited removal order where petitioner's challenge was not a habeas petition and did not contest her expedited removal on any of the grounds permissible grounds for review under 8 U.S.C. § 1252(e)).

---

[8] Petitioners do not purport to seek review pursuant to 8 U.S.C. § 1252(e)(3), which concerns challenges to the implementation of § 1225(b). Such actions must, in any event, be filed in the U.S. District Court for the District of Columbia no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure is first implemented. *See* 8 U.S.C. § 1252(e)(3).

Nor does this Court have jurisdiction over petitioners' APA and INA claims. *See* 5 U.S.C. § 701(a)(1) (stating that the APA does not apply "to the extent that . . . statutes preclude judicial review."); *E. Bay Sanctuary Covenant v. Barr*, 500 F. Supp. 3d 1030, 1039-40 (N.D. Cal. 2020) (rejecting arguments that the court had jurisdiction over APA claims in view of 8 U.S.C. § 1252's restrictions proscribing judicial review); *Mohit v. U.S. Dep't of Homeland Sec.*, 478 F. Supp. 3d 1106, 1113 (D. Colo. 2020) (concluding that the APA did not provide jurisdiction to review habeas petition challenging denial of asylum claims).[9]

### C.  Alternate Request for Writ of Error Coram Nobis

To the extent petitioners suggest that the Court nonetheless is authorized to grant relief in the form of a writ of coram nobis, the Court concludes that such a remedy is not available here. Federal courts are authorized to issue a writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651(a). *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). The All Writs Act, however, authorizes the issuance of writs "in aid of" the issuing court's jurisdiction, 28 U.S.C. § 1651, and does not confer or expand the Court's jurisdiction to order any remedy. *See Clinton v. Goldsmith*, 526 U.S. 529, 535 (1999) (noting that the All Writs Act "cannot enlarge a court's jurisdiction") (internal quotations and citation omitted); *Perez v. Barr*, 957 F.3d 958, 967 & n.8 (9th Cir. 2020) (same); *see also Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985) ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.").

---

[9] Although petitioners invoke the Court's remedial authority under the Declaratory Judgment Act (*see* Dkt. No. 1 at 2), they do not suggest that federal jurisdiction may be based on that statute. Indeed, "declaratory relief is not an independent cause of action"—only a remedy. *VIA Techs., Inc. v. SONICBlue Claims LLC*, No. C 09-2109 PJH, 2010 WL 2486022, at *3 (N.D. Cal. June 16, 2010); *see also Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court. It only permits the district court to adopt a specific remedy when jurisdiction exists.").

Moreover, "[t]he writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *Estate of McKinney By and Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995) (citation omitted). A writ of coram nobis "is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *Mills*, 221 F.3d at 1203. The writ "has been abolished in civil cases." *Id.* at 1203 n.2 (citing Fed. R. Civ. P. 60(b)).

Petitioners contend that a writ of coram nobis is available as a remedy in the present action, arguing that removals are quasi-criminal in nature and akin to the criminal punishment of banishment. They cite cases observing that some aspects of immigration matters are "quasi-criminal" or closely related to the criminal process. *See, e.g., Gonzalez v. United States*, No. CV–12–01912 DMG (DTBx), 2013 WL 942363, at *7 (C.D. Cal. Mar. 11, 2013) ("Immigration detention is quasi-criminal in nature and, like criminal defendants, immigrant detainees may challenge the terms and conditions of their detention by way of the habeas corpus statute, 28 U.S.C. § 2254."). And, as respondents acknowledge, the Supreme Court has remarked that "[d]eportation can be the equivalent of banishment or exile." *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947); *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1213 (2018) (observing that "[t]he removal of an alien is a civil matter," but noting that the Supreme Court nonetheless has applied the "void for vagueness" doctrine applicable to criminal laws in removal cases); *Barber v. Gonzales*, 347 U.S. 637, 642-43 (1954) ("Although not penal in character, deportation statutes as a practical matter may inflict the equivalent of banishment or exile, and should be strictly construed.") (internal quotations and citation omitted); *Galvan v. Press*, 347 U.S. 522, 530 (1954) (observing that "deportation is a drastic measure and at times the equivalent of banishment or exile.").

Nevertheless, petitioners do not cite any cases where a writ of coram nobis was issued in favor of a deported foreign national. And respondents cite authority generally supporting the argument that deportation is civil in nature. *See, e.g., United States v. Hernandez-Guerrero*, 147 F.3d 1075, 1077 (9th Cir. 1998) (noting the defendant's citation to Ninth Circuit authority that "deportation proceedings are civil in nature, and are not tantamount to criminal prosecutions");

15

*United States v. Yacoubian*, 24 F.3d 1, 10 (9th Cir. 1994) ("The Court has consistently classified deportation proceedings as civil in nature[.]"); *United States v. Koziel*, 954 F.2d 831, 835 (2d Cir. 1992) ("[D]eportation itself is a civil matter to which the constitutional protections applicable to criminal prosecutions do not apply. Though we noted that Congress intended the denial of a JRAD to be part of the penalty imposed on a person convicted of the specified crimes, the term 'penalty' is not synonymous with 'punishment.' Plainly deportation is a penalty, . . . but there can be no doubt, given the long line of decisions described above, that it is a civil penalty.") (internal quotations and citations omitted).

Respondents' motion to dismiss petitioners' alternate request for a writ of error coram nobis is granted.

## IV.  CONCLUSION

Based on the foregoing, the Court grants respondents' motion to dismiss petitioners' claims for lack of jurisdiction and failure to state a claim for relief.[10] Petitioners have offered no basis for the Court to conclude that their petition may be saved by amendment. The petition therefore is dismissed without leave to amend. The Clerk of Court shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: November 28, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[10] The Court finds it unnecessary to address respondents' alternative arguments for dismissal on the ground that habeas relief is moot and that petitioners' claims are additionally barred by the doctrine of consular nonreviewability.